## Commonwealth, Appellant, v. Hamilton.

*Criminal law—Practicing medicine without a license—Act of June 3, 1911, P. L. 639—Act of July 25, 1913, P. L. 1220—Prosecution—Procedure.*

A prosecution under the Act of June 3, 1911, P. L. 639, as amended by section 2 of the Act of July 25, 1913, P. L. 1220, is not required to be brought by the Bureau of Medical Education and Licensure, conducted by the attorney general or his special attorney. As a general rule every person who is capable of taking an oath in a court of justice is competent to become a prosecutor, and there is nothing in the language of the act which expressly limits the prosecution for the violation to the first section of the Act of June 3, 1911, P. L. 639, to the Bureau of Medical Education and Licensure. The word "procedure" as used in the act must be deemed to mean the conducting of the case. But the act does not confer upon the Bureau of Licensure or the attorney general exclusive power to bring the prosecution. An indictment duly signed by the district attorney, therefore, is properly drawn, and sufficient authority on which to base a prosecution.

Argued April 23, 1920.    Appeal, No. 78, April T., 1920, by Commonwealth of Pennsylvania, from judgment of Q. S. of Westmoreland County, Nov. T., 1919, No. 7, quashing indictment in the case of Commonwealth of Pennsylvania v. David Hamilton.   Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Reversed.

Indictment for practicing medicine without a license in violation of the provisions of the Act of June 3, 1911, P. L. 639, as amended by the Act of July 25, 1913, P. L. 1220.   Before McCONNELL, P. J.

Rule to quash indictment.

The opinion of the Superior Court states the case.

The court quashed the indictment.   Commonwealth appealed.

*Error assigned* was the decree of the court.

420 COMMONWEALTH, Appellant, *v.* HAMILTON.

*Charles C. Crowell,* and with him *N. A. Cort,* District Attorney, for appellant.—Neither under the provisions of the Act of June 3, 1911, P. L. 639, or the Act of July 25, 1913, P. L. 1220, is exclusive authority to bring the prosecution conferred upon the Bureau of Medical Education and Licensure and the attorney general. The enforcement of these acts were left to the ordinary modes of procedure for the enforcement of penal statutes: Com. v. Byrd, 24 Dist. Reports 1031; Com. v. Spencer, 28 Pa. Superior Ct. 301; Com. v. Barr, 25 Pa. Superior Ct. 609.

*James S. Moorhead,* and with him *S. W. Bierer,* for appellee.

OPINION BY HENDERSON, J., July 14, 1920:

This case arises on the appeal of the Commonwealth from the action of the court of quarter sessions quashing an indictment against the defendant charging him with unlawfully, wilfully and knowingly engaging in the practice of medicine and surgery without first receiving a certificate of licensure from the bureau of medical education and licensure. The indictment was drawn under the Act of June 3, 1911, as amended by the second section of the Act of July 25, 1913, P. L. 1220. The objections against the indictment were: (1) That the complaint was not made by the bureau of medical education and licensure, or by its direction. (2) That the indictment was signed by the district attorney of the county and not by the attorney general or special attorney, or both. The facts alleged in the indictment constitute a misdemeanor under the first section of the Act of 1911, and the indictment charging the offense is in proper form unless the contentions of the defendant are correct. The objections are based on a paragraph in the second section of the amended act which is in the following words: "It shall be the duty of the bureau to enforce all the requirements of this act. In case of vio-

lation of the provisions of this act, procedure shall be through either the office of the attorney general of the State of Pennsylvania or by special attorney, or both, at the discretion of the bureau." The position of the appellee is that a prosecution could only be brought by the bureau of medical education and licensure acting in its official capacity, and that the case could only be conducted, including the preparation and signing of the indictment, by the attorney general or a special attorney representing the attorney general's office. The view of the court is thus expressed: "In a proceeding when it has been examined by the proper bureau, either specially, or under its general rules, when the bureau has determined that there is a proper case for prosecution, and the attorney general authorizes by his consent and advice the introduction of such a proceeding, and that is followed up here, and the case comes before the grand jury in that shape, then we have a case that comes into court by the authorized procedure. There is a provision in this act that leaves some discretion to the bureau as to whether it is the attorney general that shall proceed for the enforcement of the law, or whether it is by special attorney. And we understand that 'special attorney' to be the attorney specially representative of the attorney general's office." It may be inferred from the opinion of the court that the indictment charging such an offense must contain an averment that the precedent actions deemed necessary had been taken. It must appear that the bureau instituted the prosecution; that it had passed the scrutiny of the attorney general's office; that the indictment was signed by the attorney general or a special attorney representing his office; and that the discretion of the bureau had been exercised in selecting the person to so sign. It will be observed that the paragraph, from the statute above quoted, has reference: First, to the enforcement of all the provisions of the enactment; and secondly, to the punishment of violations thereof. It imposes the duty on the bureau

to enforce all the requirements of the act. Does this language invest in that board exclusive authority with respect to criminal prosecution? The offense charged was distinctly declared to be a misdemeanor in the Act of 1911. There are many other regulations contained in the legislation relating to medical education, and numerous duties are cast on the medical board with respect thereto, but there is nothing in the language of the enactment which expressly limits the prosecution for violation of the first section of the Act of 1911 to that bureau. As a general rule every person who is capable of taking an oath in a court of justice is competent to become a prosecutor. Those only are disqualified from so doing who are incapable of taking an oath, or from infamy which presumes them unworthy of credit are generally incompetent to become witnesses: 1 Chitty, Criminal Law 2; Commonwealth v. Barr, 25 Pa. Superior Ct. 609. The mandate to the bureau to enforce the comprehensive provisions of the statute is not an exclusive authority to it to institute criminal prosecution thereon. The same obligation, in practically the same terms, was imposed by the Act of March 24, 1909, on the dairy and food commissioner with reference to the enforcement of that statute which contained a provision making it a misdemeanor to sell adulterated ice cream, but we held in Commonwealth v. Crowl, 52 Pa. Superior Ct 539, that it was not an objection to the prosecution that it was not commenced by the dairy and food commissioner; that while that officer was specially charged with the enforcement of the provisions of the statute, this did not disable another citizen of the Commonwealth from appearing as a prosecutor, as the act complained about was a misdemeanor. At common law constables were bound to present to the term or last court all offenses inquirable in those courts: 2 Hawk. pl. C., chapter 10, section 34. Such a return is in the nature of an official information, and being made under oath is the equivalent of a charge before a magis-

trate.   Numerous statutes in this State require con-
stables to make return of specific violations of law;
the sale of liquor contrary to law; disturbances at elec-
tions; defects in highways; offenses against pure food
laws, etc.   Such returns are in effect complaints against
the persons named and are sufficient grounds on which
to found indictments, but it has never been pretended
that this obligation enjoined on constables makes them
exclusive actors in such prosecutions.   No more as we
view the statute is the authority to enforce the law
limited to the bureau of medical education with respect
to the subject now under consideration.   That board has
its place of business at the State capitol.   It is presum-
ably not familiar with the conduct of citizens of the
State generally.   It would be an unwieldy and probably
inefficient method which required it to be informed of
transgressions of the statute with reference to the il-
legal practice of medicine throughout the Common-
wealth as a necessary condition precedent to the enforce-
ment of the law.   It is more consonant with the legis-
lation of the State to hold that while the law requires
the board to be active in procuring the enforcement of
all its provisions, it is neither to be expected nor re-
quired to be exclusively responsible for criminal prose-
cutions thereon.

The second question arises under the use of the word
"procedure."   In the statute this is said to be through
the office of the attorney general, but if the word is to
be given its widest significance, this would include the
whole of the case, including the pleading, evidence, and
practice, and that could certainly not have been the
thought of the legislature.   The procedure in a criminal
case is largely conducted by the trial judge.   The form
of the pleading, competency of evidence, the nature of
the judgment, are all under the supervision and control
of that tribunal.   It is not the function of the prosecut-
ing officer to control or determine on these subjects.
It is said in Bishop on Criminal Procedure that the

course of the court after the defendant was brought in; the rulings of law whereby we determine what testimony is to be admitted and what rejected in each case; and what is the weight to be given to the testimony admitted, are matters of procedure. It was said by Mr. Justice MILLER in Kring v. Mo., 107 U. S. 231, that the word procedure as a law term is not well understood, and was not at the time of the opinion to be found in what he characterized as the best law dictionary in this country. He accepted the definition of Mr. Bishop in part, and applied it to the consideration of an ex post facto law then before the court which affected procedure. Nor can it have been the legislative intention to give to the bureau the authority to determine who should establish or regulate procedure in the sense in which we have been considering that term. As expressed in the statute, it is to be through the office of the attorney general, or by private counsel, as the bureau may elect. As neither the attorney general nor the private counsel can declare what shall be the procedure in a given case, with or without the permission of the bureau, it is evident that the term was not used in a technical sense. It is not a word of art, and therefore should be construed with reference to its context and the object of the legislation in which it is used. Viewed in this light it is best understood as meaning the conducting of the case. This is in harmony with the authority of lexicographers and best expresses the meaning of the legislature, if the statute is capable of application according to its terms. It is within the right of the bureau then to apply to the attorney general's office for legal assistance, or to private counsel if the bureau so desire. The attorney general is not especially invested with authority. It is through his office the business is to be carried on, or through the efforts of private counsel if the bureau so elect. This is a different relation to the case from that which the opinion of the learned judge of the court of quarter sessions gives to the representative of the attorney general. The

office of district attorney is provided for by the Constitution of 1874, and prior to that time existed by statute.   The district attorney occupies a position of great importance and high responsibility.   He is presumably elected because of the confidence of his constituency in his ability and integrity, and the Act of May 3, 1850, P. L. 654, provides that he shall sign all bills of indictment, and conduct in court all criminal or other prosecutions in the name of the Commonwealth, or when the State is a party, which arise in the county for which he is elected, and perform all the duties which now by law are to be performed by deputy attorney generals.   We have here a specific direction as to the manner in which bills of indictment are to be signed. Exception exists in the case of the disability of the district attorney, or his neglect or refusal to proceed with a prosecution, in which instances provision is made for the appointment by the court of a special district attorney to take the place of that officer pro hac vice. These special cases illustrate the importance of the action of the district attorney in all other instances. The position of the appellee would require us to hold that all of the district attorneys of the Commonwealth are stripped of their official duties with reference to the prosecution of persons charged with a violation of the first section of the Act of 1911, and that the place of any one of them in whose district such a prosecution arises is to be filled not by an appointment of the court, but by the bureau of medical education and licensure in the exercise of its discretion.   So far-reaching and radical a result of the law in this respect ought not to be determined except under clear statutory compulsion. The statute does not declare any such effect in terms, nor are we able to so read it as to draw a necessary implication of that effect.   A case might arise where exceptional conditions would render it advisable that some other than the district attorney should have charge of the prosecution of an indictment under this act, and

the legislature probably had this in view in making provision for other counsel at the election of the medical board. We are not convinced that there was an intention to change the established method of the prosecution of misdemeanors with respect to violations of the statute under consideration. The Act of 1850 is still in force unless repealed pro tanto by the Act of 1913. As there is no requirement in terms in the latter act that the indictment must be signed by the special attorney employed by the bureau of medical education and licensure, and no prohibition that it be signed by the officer whose authority generally is to prepare and sign it, we are unable to reach the conclusion that the latter officer is disqualified from this exercise of his usual official duty. No right of the defendant is prejudiced, nor any of his liberties or privileges impaired by the act of the district attorney in signing the indictment; and we are unable to accept the conclusion that any other person has supplanted him under the Act of 1913.

It is worthy of consideration, too, that that part of the section in question is open to the inquiry whether the discretion of the bureau relates to the employment of the services of the attorney general's office or of a special attorney in all cases, or only when that board deems it necessary or desirable; in all other instances leaving the conduct of the case to the district attorney as in other criminal cases. It is unnecessary to enter into a discussion of this feature of the case, however, in view of the conclusion which we reached on the other points. We are unable to hold with the court that the prosecution of a violation of the act can only be instituted by the bureau of medical education and licensure, and that such a case can only be maintained on an indictment signed by a person selected by that bureau.

The order of the court of quarter sessions quashing the indictment is reversed, and the record remitted with a procedendo.